IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------
                                                 :         CIVIL ACTION No.
EMAD ELKADRAWY                   :
           Plaintiff,                       :
    vs.                                           :
                                                 :
THE VANGUARD GROUP, INC.   :
           Defendant                     :

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff in the above captioned matter, claims a sum in excess of One Hundred Thousand Dollars ($100,000.00) in damages and upon his causes of action, avers as follows:

2. This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations by Defendant The Vanguard Group, Inc., rights secured to Plaintiff by the laws of the United States of America and the Commonwealth of Pennsylvania.

3. This action arises under the Civil Rights Act 42 U.S.C. §1981, which prohibits race discrimination and retaliation by employers, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful, deliberate and intentional discrimination and retaliation by Defendant.

4. This action also arises under the Pennsylvania Human Relations Act, 43 P.S. Section 962 et seq., which prohibits race and national origin discrimination. On April 21, 2008, The PHRC sent Plaintiff a notice of right to pursue his claims in Court. Attached hereto as Exhibit A is a copy of the PHRC notice.

## II. JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1331, which provide for the original jurisdiction of Plaintiff's claims arising under the laws of the United States of America. This Court also has supplemental jurisdiction over Plaintiff's state law action. The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. §1391(c).

## III. PARTIES

6. Plaintiff, Emad Elkadrawy, is a citizen of the United States and the Commonwealth of Pennsylvania, who currently resides in Norristown, Pennsylvania.

7. Defendant, The Vanguard Group, Inc. is a corporation in the Commonwealth of Pennsylvania with its business offices located in King of Prussia, Pennsylvania, and at all times material hereto was Plaintiff's employer.

## IV. STATEMENT OF FACTS

8. Plaintiff is an African, originally from Egypt, and an African-American by race.

9. Plaintiff migrated to the United States in 1999 and obtained his United States citizenship on June 30, 2005.

10. Plaintiff began employment with Defendant in October 2000 as a Corporate Accountant, and worked in this position until April 2006.

11. In November 2003 Plaintiff sat for the final examination and passed the Certified Public Accountant examinations as required by the Pennsylvania State Board of Accountancy.

12. In order to obtain the license as a CPA, Defendant was required to verify Plaintiff's work experience.

13. Following his passing the written CPA examinations, Plaintiff constantly requested that Defendant provide him with the same equal opportunities that Defendant gave to the Caucasian employees similarly situated to Plaintiff to rotate the various departments in Defendant's office in order to obtain the necessary experience required to obtain his CPA license. But Defendant denied Plaintiff this equal opportunity. These requests were made to Defendant's Senior Manager Robert Poorman, Principal Kim Lynch, and Manager Jim Fromheartz.

14. Defendant readily provided Plaintiff's Caucasian co-workers immediate opportunities of rotation within the various department when they requested it while Plaintiff was denied a rotation despite his repeated request to Defendant's officials, such as Mr. Poorman, Ms. Lynch and Mr. Fromheartz.

15. Because Defendant kept denying Plaintiff this rotation opportunity, 26 months after Plaintiff first requested a rotation, Plaintiff took advantage of an open position and transferred to an Internal Auditor position in April 2006.  Plaintiff's Caucasian co-workers were given the opportunity to rotate the departments without having to wait for open positions in the various departments.

16. In or about February 2007 after Plaintiff had completed the necessary hours of accounting experience required and became eligible for the CPA license, Plaintiff

      contacted Defendant's officials, Robert Poorman and Kim Lynch to verify his hours in an application Plaintiff was required to complete and file with the Pennsylvania Board of Accountancy, however, these Defendant officials both refused to do so without giving Plaintiff any legitimate reason. Mr. Poorman had told Plaintiff he would not sign the form because his own license was inactive. This turned out to be a false statement by Mr. Poorman. Defendant's officials however readily signed off on the application forms of Plaintiff's Caucasian co-workers, David Herrington, Joan Smith and David Bell in order for them to obtain their CPA licenses.

17. Defendant's failure to verify Plaintiff's work hours in the application form unreasonably and discriminatorily delayed Plaintiff's opportunity to obtain his CPA license, which resulted in Plaintiff suffering loss income.

18. Plaintiff complained about Defendant's discriminatory refusal to sign his application form so he could obtain his CPA license to Defendant's Human Resources Specialist, Courtney Kahriger. Plaintiff told Ms. Kahriger that while Defendant was refusing to sign off on his application form to verify his hours, Defendant was readily signing off on Plaintiff's co-workers, who were Caucasian. Ms. Kahriger told Plaintiff that she would investigate Plaintiff's complaint. Plaintiff also provided Ms. Kahriger with information that clearly showed that Mr. Poorman had lied to him about the reason Mr. Poorman provided when he refused to sign off on Plaintiff's application.

19. While Ms. Kahriger did not get back to Plaintiff regarding the subject of his complaint, one week after Plaintiff's complaint to Ms. Kahriger Plaintiff received

       a disciplinary action of "needs improvement" regarding his performance. This disciplinary action by Defendant subsequent to Plaintiff's engaging in protected activity under the Civil Rights Act was retaliatory as Plaintiff's work performance was good and Plaintiff disagreed with Defendant's evaluation of Plaintiff's work performance as "needs improvement".

20. Defendant wanted to keep Plaintiff in a low-paying position by not verifying his CPA license application, while the wages of Plaintiff's Caucasian co-workers was been increased and eligible for promotion to positions that had a qualification requirement of a CPA license. Timothy Codd, Defendant's Senior Manager, asked Plaintiff not to apply for the CPA certification and to wait for several years, despite the fact that Plaintiff had completed the necessary hours. Robert Poorman also asked Plaintiff to wait several more years to apply, despite the fact that he knew Plaintiff had completed all the required hours.

21. Defendant also consistently paid Plaintiff substantially less than his Caucasian co-workers in similar position.

22. Defendant also subjected Plaintiff to racial harassment while Plaintiff was employed with Defendant.

23. Defendant gave Plaintiff significantly more work assignments than his Caucasian co-workers in the same position. On one occasion, one of Plaintiff's Caucasian co-workers, Neil Moore, while talking to Plaintiff's manager, Beth Previti, (Caucasian), stated, "you're keeping Emad very busy". Ms. Previti responded, "No, we're not keeping him busy, **we're slaving him**". This incident occurred in front of Plaintiff's cubicle.

24. During another occasion of a one-on-one meeting with his supervisor, Beth Previti, Ms. Previti continuously yelled at Plaintiff, slammed her fist on the table in front of Plaintiff, in a very intimidating manner, saying,' "Don't ever interrupt me". Ms. Previti never acted in this caustic and demeaning manner to Caucasian employees reporting to her. Plaintiff complained about this incident to Defendant's Human Resources Specialist, Linda Sanderson. But Defendant took no remedial action.

25. During a meeting in or about February 2005 between Plaintiff and Robert Poorman about been denied rotation and that he had been working for Defendant for about six (6) years with no promotion, Mr. Poorman stated to Plaintiff, "People like yourself will never go anywhere in this company". Plaintiff asked Mr. Poorman, "why?" Mr. Poorman responded, "This is the culture of this company. If you want a job that pays the bill, you have it, if you want to move up, this is not the place, it would not happen, and so you need to find another job".

26. In another occasion on May 25, 2007, during a meeting between Plaintiff and his direct supervisor Robert Ross, (Caucasian), and after Plaintiff had asked him a question as to what level of accuracy was expected of him regarding certain work assignments, Mr. Ross stood up, raised his voice at Plaintiff and referred to Plaintiff as a "Smart Ass".

27. Plaintiff again complained to Defendant's Human Resources about been subjected to a hostile work environment, but Defendant never took any remedial action nor responded to Plaintiff's complaint.

28. Plaintiff was subjected to various incidents of racially motivated demeaning and intimidating conduct by his supervisors and Defendant's managers, which were never directed at Caucasian employees.

29. As a result of Defendant's discriminatory and retaliatory actions because of Plaintiff's race and or national origin, Plaintiff has lost income and suffered significant emotional injuries.

30. In December 2007, Defendant constructively terminated Plaintiff's employment.

V.  **STATEMENT OF CLAIM**

**COUNT ONE – 42 U.S.C. §1981 VIOLATIONS**

**RACE DISCRIMINATION**

31. Plaintiff incorporates by reference all allegations alleged in paragraphs one (1) through thirty (30) above as if same were fully set forth at length herein.

32. The acts and conducts of the Defendant through its respective agents, officers, employees and officials as stated above where Plaintiff was treated differently from other employees similarly situated to him, and to his detriment, on the basis of his race and or national origin as to the terms, compensation, conditions, opportunities, privileges and benefits of his employment was a violation of the Civil Rights Act, 42 U.S.C. §1981.

33. As a direct result of said discriminatory practices of the Defendant, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and stress.

### COUNT TWO – 42 U.S.C. §1981 VIOLATIONS - RETALIATION

34. Plaintiff incorporates by reference all allegations alleged in paragraphs one (1) through thirty-three (33) as if the same were fully set forth at length herein.

35. The acts and conducts of the Defendant as stated above where Plaintiff was subjected to adverse employment actions by Defendant after engaging in protected activities under this Act were violations of the Civil Rights Act, U.S.C. §1981.

36. As a direct result of the said retaliatory practices of the Defendant, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and stress.

### COUNT THREE –PHRA VIOLATION-
### RACE AND NATIONAL ORIGIN DISCRIMINATION

37. Plaintiff incorporates by reference all allegations alleged in paragraphs one (1) through thirty-six (36) as if same were fully set forth at length herein.

38. The acts and conducts of the Defendant as stated above where Plaintiff was subjected to race discrimination by Defendant, are violations of the Pennsylvania Human Relations Act.

39. As a direct result of said violation of the Pennsylvania Human Relations Act, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future

earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and stress.

**VI.**       **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendant, and request that this Court:

A.     Enter judgment against the Defendant for back pay, front pay, loss income, loss benefits, pre and post judgment interests, costs of suit, punitive damages, compensatory damages for emotional pain and suffering, attorneys' fees and expert witness fees as permitted by law; and

B.     Award such other relief, as the Court may deem necessary and just, including an order to make whole.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all questions of fact raised by this complaint.

/s/ Olugbenga O. Abiona
_____
Olugbenga O. Abiona
1433 South 4th Street
Philadelphia, PA 19147
(215) 625-0330
Attorney ID. #57026
Attorney for Plaintiff

Dated: September 8, 2008